UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

BOBBY E. WINGATE,                                   Case No.: 3-13-cv-929-J-34JRK

     Plaintiff,

v.

ANGELA COREY, et al.,

     Defendants,

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bobby E. Wingate (hereinafter, "Plaintiff"), an individual, hereby files this First Amended Complaint and Demand for Jury Trial, pursuant to *Fed. R. Civ. Pro*. 15(a)(1)(B), and sues ANGELA COREY (hereinafter "State Attorney Corey"), individually and in her official capacity as the State Attorney for the Fourth Judicial District of Florida; CHERYL PEEK (hereinafter "ASA Peek"), individually; TONYA BARGE a/k/a TONYA PATTERSON-BARGE (hereinafter "ASA Barge"), individually; JOHN RUTHERFORD (hereinafter "Sheriff Rutherford"), in his official capacity as Sheriff for Duval County, Florida; DANIEL WILL (hereinafter "Officer Will"), individually; and DANIEL PFANNENSTEIN (hereinafter "Officer Pfannenstein"), individually (collectively, "Defendants"), and alleges the following:

### INTRODUCTION

1.    This is an action for money damages, declaratory relief, and

injunctive relief, brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, arising from the unlawful detention, arrest, and subsequent prosecution of Plaintiff.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction).

3.      Venue is proper in this judicial district and division, pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.02.  Plaintiff is a resident of this judicial district and division, and Defendants were all employed in this judicial district and division at all times material hereto.  Additionally, all of Defendants' conduct that gave rise to the claims herein occurred in this judicial district and division.

### PARTIES

4.      Plaintiff is an indigent, thirty-six (36) year-old, African American, male, citizen of the state of Florida and resident of the city of Jacksonville. Plaintiff is currently unemployed but has worked as a janitor.

5.      State Attorney Corey is now, and at all times material hereto was, the State Attorney of the Fourth Judicial District of Florida.  She assumed office in early 2009 and is the chief prosecutor for the State of Florida in the Fourth Judicial District of Florida, which comprises Duval, Clay, and Nassau Counties.  In this

capacity, State Attorney Corey exercises overall responsibility for the policies and practices of all Assistant State Attorneys who are employed by her office.  At all times material hereto, State Attorney Corey acted under color of state law. Plaintiff sues State Attorney Corey in her official and individual capacities for nominal damages, compensatory damages, punitive damages (only in her individual capacity), declaratory relief, injunctive relief, and attorneys' fees and costs.

6.      ASA Peek is now, and by information and belief, at all times material hereto was, an Assistant State Attorney for, and Managing Director of the State Attorney's Office for, the Fourth Judicial District of Florida.  In this capacity, ASA Peek exercises overall managerial responsibility for the policies and practices of all Assistant State Attorneys who are employed by the State Attorney's Office for the Fourth Judicial District.  At all times material hereto, ASA Peek acted under color of state law.  Plaintiff sues ASA Peek in her individual capacity for nominal damages, compensatory damages, punitive damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

7.      ASA Barge, at all times material hereto, was an Assistant State Attorney for the Fourth Judicial District of Florida.  ASA Barge was assigned to prosecute the case of *State of Florida v. Bobby E. Wingate*, case no. 16-2012-CT-018935, in which Plaintiff was a criminal defendant.  At all times material hereto,

ASA Barge acted under color of state law.  Plaintiff sues ASA Barge in her individual capacity for nominal damages and declaratory relief.

8.      Sheriff Rutherford is now, and at all times material hereto was, the Sheriff of Duval County, Florida.  He assumed office in July 2003.  As Sheriff of Duval County, Florida, he exercises overall responsibility for the policies, training, instruction, supervision, customs, practices, policies, discipline, control and conduct  of all law enforcement officers employed by the Jacksonville Sheriff's Office (hereinafter, "JSO").  Sheriff Rutherford made policy for the JSO with respect to searches, seizures, arrests and use of force.  At all times material hereto, Sheriff Rutherford had the power, right and duty to train and control his officers, agents and employees to conform to the Constitution of the United States.  At all times material hereto, Sheriff Rutherford, and his agents and employees, acted under color of state law.  Plaintiff sues Sheriff Rutherford in his official capacity for nominal damages, compensatory damages, and attorneys' fees and costs.

9.      Officer Will was, at all times material hereto, a law enforcement officer, employed by the JSO.  Officer Will was the first of the Defendants to initiate contact with Plaintiff on December 26, 2012.  At all times material hereto, Officer Will acted under color of state law.  Plaintiff sues Officer Will in his individual capacity for nominal damages, compensatory damages, punitive damages, and attorneys' fees and costs.

10.     Officer Pfannenstein was, at all times material hereto, a law enforcement officer, employed by the JSO.  Officer Pfannenstein was the second of the Defendants to initiate contact with Plaintiff on December 26, 2012.  At all times material hereto, Officer Pfannenstein acted under color of state law.  Plaintiff sues Officer Pfannenstein in his individual capacity for nominal damages, compensatory damages, punitive damages, and attorneys' fees and costs.

### GENERAL ALLEGATIONS

11.     On December 26, 2012, between 11:00 a.m. and noon, Plaintiff was walking eastbound along the southern (right side) shoulder of Oliver Street – a residential, neighborhood street – in Jacksonville, Florida.

12.     Plaintiff was walking along a shoulder of Oliver Street, because no sidewalks were provided for pedestrian traffic on either side of the street.

13.     Plaintiff was exercising due and reasonable care as he walked.

14.     Plaintiff had heard that there was an available room for rent, and so, he was enroute to inquire about possibly renting and moving into the room.

15.     While Plaintiff was walking, Officer Will was on duty as a patrol officer with the JSO.

16.     While Plaintiff was walking, Officer Will approached Plaintiff in an official JSO police cruiser (hereinafter the "police cruiser").

17.     From the first moment that Officer Will viewed Plaintiff walking along the shoulder of Oliver Street, Officer Will believed that Plaintiff looked suspicious.

18.     Officer Will attempted to initiate a conversation with Plaintiff by asking Plaintiff if he (Plaintiff) would stop and talk with him (Officer Will).

19.     Plaintiff responded to Officer Will by apologizing and saying, "No sir, I'm in a rush," or other, similar words to that effect.

20.     Officer Will then asked Plaintiff if Plaintiff lived in the area, to which Plaintiff answered "No, sir," or other, similar words to that effect.

21.     Officer Will then departed from Plaintiff in his police cruiser.

22.     Thereafter, Officer Will stopped his police cruiser, retrieved his multi-inch-thick book of criminal violations and civil infractions, and began to search for a law or ordinance that Plaintiff could be said to have violated.  Officer Will engaged is this search in an effort to find a pretext to compel Plaintiff to stop.

23.     After approximately five to ten minutes of searching and perusing the book of criminal violations and civil infractions, Officer Will found Chapter 316.130(4) of Florida Statutes, which provides that "[w]here sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the shoulder on the left side of the roadway in relation to the pedestrian's direction of travel, facing traffic which may approach from the

opposite direction."

24.     Thereafter, in his police cruiser, Officer Will reapproached Plaintiff from the west.

25.     Officer Will then exited his police cruiser and ordered Plaintiff to stop.

26.     Under the facts and circumstances, a reasonable officer would not have ordered Plaintiff to stop.

27.     Upon hearing Officer Will again, Plaintiff turned towards Officer Will and reiterated to Officer Will that Plaintiff was "in a rush".

28.     In response, Officer Will approached Plaintiff and, with his closed, right-hand fist, punched Plaintiff in Plaintiff's jaw on the left side of Plaintiff's face (from Plaintiff's perspective), causing Plaintiff severe and persistent pain.

29.     Immediately thereafter, Officer Will grabbed Plaintiff's shirt, using both hands, approximately at Plaintiff's upper chest.

30.     Pulling Plaintiff closer to him, Officer Will then asked Plaintiff, "Do you want to fight me?" or other, similar words to that effect.

31.     Plaintiff responded to Officer Will by saying, "No sir," and explaining that Plaintiff knew that Plaintiff would be held criminally responsible, if the two of them were to engage in a fight.

32.     Officer Will then loosened his grip on Plaintiff, allowing Plaintiff to retreat a few feet from Officer Will.

33.     Plaintiff then pulled out his cell phone, dialed 9-1-1, and reported what had just transpired.

34.     While Plaintiff was on the phone with a 9-1-1 operator, Officer Pfannenstein arrived on the scene to assist Officer Will.

35.     Officers Will and Pfannenstein both drew their tasers and aimed them at Plaintiff, using their respective red laser beams, emitted from their tasers.

36.     Then, while Plaintiff was still on the phone with the 9-1-1 operator, Officers Will and Pfannenstein both tackled Plaintiff to the ground, causing several bruises and abrasions, and a permanent scar to Plaintiff's body.

37.     Officers Will and Pfannenstein then placed Plaintiff under arrest for (1) Resisting Arrest Without Violence, in violation of Chapter 843.02 of Florida Statutes, and (2) Failing to Walk on the Left Side of a Highway When No Sidewalks Are Provided, in violation of Chapter 316.130(4) of Florida Statutes.

38.     The above-described incident involving Plaintiff is representative of the widespread practice and pattern of JSO officers pretextually stopping individuals in bad faith and without constitutionally cognizable cause.  Sheriff Rutherford and the JSO have a widespread practice of conducting pretextual stops, without even arguably probable cause.

39.     On January 4, 2013, the State Attorney's Office charged Plaintiff by information with (1) Resisting Arrest Without Violence, in violation of Chapter 843.02 of Florida Statutes, and (2) Failing to Walk on the Left Side of a Highway When No Sidewalks Are Provided, in violation of Chapter 316.130(4) of Florida Statutes.

40.     On March 3, 2013, ASA Barge presented the criminal case against Plaintiff to a jury in the County Court of the Fourth Judicial District, in and for Duval County, Florida, with Judge Michelle Kalil presiding.

41.     On March 3, 2013, after ASA Barge rested her case, Plaintiff's Assistant Public Defender made an oral motion for judgment of acquittal on all counts.

42.     After oral arguments and a brief recess, Judge Kalil granted the motion for judgment of acquittal, finding that Officer Will's conduct vis-à-vis Plaintiff was not "a lawful execution of a legal duty".

43.     In total, Plaintiff spent two days in jail at the Duval County Pre-Trial Detention Center.  Additionally, Plaintiff continues to suffer from the physical injuries he sustained when he was tackled to the ground by Officer Will and Officer Pfannenstein, and from the persistent, emotional and psychological injuries from the humiliating experience of the arrest and the public, criminal trial he endured.  Plaintiff must regularly treat his persistent physical wounds with

remedial ointments.

### GENERAL ALLEGATIONS AS TO
### STATE ATTORNEY COREY, ASA PEEK AND ASA BARGE

44.     At all material times hereto, by information and belief, ASA Barge was assigned to handle misdemeanor criminal cases in Duval County, Florida.  As such, ASA Barge was colloquially referred to as a "misdemeanor prosecutor".

45.     By information and belief, State Attorney Corey and ASA Peek established standard operating procedures (hereinafter, the "SOPs") for the handling of all criminal cases throughout the Fourth Judicial District.

46.     By information and belief, the SOPs were established by explicit, written policies, as well as by implicit expectations, conveyed by State Attorney Corey's and ASA Peek's words, conduct, and material omissions.

47.     By information and belief, the SOPs limited the prosecutorial discretion that misdemeanor prosecutors wielded, such that misdemeanor prosecutors were expected to prosecute even some cases that they (the misdemeanor prosecutors) deemed to be unsupported by sufficient evidence to obtain a conviction.

48.     By information and belief, the SOPs provided that, occasionally, even if a misdemeanor prosecutor were to believe that a case should not be prosecuted for lack of evidence or want of legal cause, the misdemeanor prosecutor

should nevertheless prosecute the case, since such prosecution would provide valuable trial experience for the misdemeanor prosecutor.

49.    By information and belief, the SOPs provided that, occasionally, even if a misdemeanor prosecutor were to believe that a case should not be prosecuted for lack of evidence or want of legal cause, the misdemeanor prosecutor should nevertheless prosecute the case, since the judge or jury would simply acquit the defendant or dismiss the case, respectively, if the case were truly a case without legal merit.

50.    By information and belief, the SOPs discouraged misdemeanor prosecutors from adhering to the mandate of Florida Rule of Professional Conduct 4-3.8(a), and its underlying Due Process policies.[1]

51.    By information and belief, State Attorney Corey and ASA Peek knowingly violated Florida Rule of Professional Conduct 4-3.8(a), and its underlying Due Process policies, by virtue of the SOPs they established.

52.    By information and belief, the SOPs prioritized ostensibly favorable trial statistics (*e.g.*, a high number of trial convictions in relation to the number of cases in which (a) the charge was dismissed, or (b) the defendant was found not guilty by a jury) over rigorous adherence to the strictures of Florida Rule of

_____

[1] Florida Rule of Professional Conduct 4-3.8(a) provides that "[t]he prosecutor in a criminal case shall: (a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . ."

Professional Conduct 4-3.8(a) and the underlying Due Process policies.

53.     By information and belief, State Attorney Corey and ASA Peek knowingly and willfully endorsed the slogan, "Try more, win more".

**COUNT I – 42 U.S.C. § 1983: AFFIRMATIVE DEPRIVATION OF DUE PROCESS, AS TO STATE ATTORNEY COREY AND ASA PEEK**

54.     Plaintiff incorporates by reference and realleges paragraphs one (1) through fifty-three (53) as though fully set forth here.

55.     State Attorney Corey and ASA Peek deprived Plaintiff of his clearly established due process rights under the Fourteenth Amendment to the United States Constitution.  The SOPs that they established is the cause in fact of the constitutional violation.

56.     Unless restrained by this Court, State Attorney Corey and ASA Peek will continue to enforce the SOPs.  Plaintiff has been and would continue to be irreparably harmed by State Attorney Corey's and ASA Peek's denial of Plaintiff's fundamental constitutional right to due process.

**COUNT II–42 U.S.C. § 1983: AFFIRMATIVE DEPRIVATION OF DUE PROCESS, AS TO ASA BARGE**

57.     Plaintiff incorporates by reference and realleges paragraphs one (1) through fifty-three (53) as though fully set forth here.

58.     ASA Barge deprived Plaintiff of his clearly established due process rights under the Fourteenth Amendment to the United States Constitution.  The cause in fact of the constitutional violation was either her (ASA Barge's) willful

failure to conduct an independent analysis as to whether the criminal case against Plaintiff was supported by legally cognizable, probable cause, or in the alternative, upon conducting an independent analysis as to whether the criminal case against Plaintiff was supported by legally cognizable, probable cause, her failure to conclude that their case against Plaintiff was predicated upon facially legally insufficient evidence to support a conviction.

59.    ASA Barge knew, or should have known, that the criminal case against Plaintiff was predicated upon facially legally insufficient evidence to support a conviction.

60.    ASA Barge chose to follow the SOPs, set by State Attorney Corey and ASA Peek, rather than follow the mandate of the Florida Rules of Professional Conduct, which required her to conduct her own analysis of the State's evidence against Plaintiff.

61.    Plaintiff has been harmed by ASA Barge's denial of Plaintiff's fundamental constitutional right to due process.

### COUNT III – 42 U.S.C. § 1983: DEPRIVATION OF DUE PROCESS BY FAILURE TO TRAIN AS TO STATE ATTORNEY COREY AND ASA PEEK

62.    Plaintiff incorporates by reference and realleges paragraphs one (1) through fifty-three (53) as though fully set forth here.

63.    State Attorney Corey and ASA Peek deprived Plaintiff of his clearly established due process rights under the Fourteenth Amendment to the United

States Constitution.

64.     Their (State Attorney Corey's and ASA Peek's) failure to train misdemeanor prosecutors about the mandatory, ethical, prosecutorial obligation to analyze every criminal case, to which the misdemeanor prosecutors are assigned, to determine if a case is supported by legally cognizable, probable cause, is the cause in fact of the constitutional violation.

65.     State Attorney Corey and ASA Peek knew of the need to train misdemeanor prosecutors about the mandatory, ethical, prosecutorial obligation to analyze every criminal case, to which the misdemeanor prosecutors are assigned, to determine if a case is supported by legally cognizable, probable cause, is the cause in fact of the constitutional violation.

66.     In spite of such knowledge, State Attorney Corey and ASA Peek willfully chose to not train misdemeanor prosecutors about the mandatory, ethical, prosecutorial obligation to analyze every criminal case, to which the misdemeanor prosecutors are assigned, to determine if a case is supported by legally cognizable, probable cause, is the cause in fact of the constitutional violation.

67.     Their (State Attorney Corey's and ASA Peek's) failure to train the misdemeanor prosecutors in this regard amounts to deliberate indifference to a manifest need for such training, and was always likely to result in a misdemeanor prosecutor either making an erroneous decision about the evidentiary support of a

case, or willfully ignoring the presence or lack of evidentiary support of a case, precisely like the error or willful omission that ASA Barge made prior to, and during, Plaintiff's criminal case.

### COUNT IV – 42 U.S.C. § 1983: DEPRIVATION OF DUE PROCESS BY FAILURE TO SUPERVISE AS TO STATE ATTORNEY COREY AND ASA PEEK

68.     Plaintiff incorporates by reference and realleges paragraphs one (1) through fifty-three (53) as though fully set forth here.

69.     State Attorney Corey and ASA Peek deprived Plaintiff of his clearly established due process rights under the Fourteenth Amendment to the United States Constitution.

70.     Their (State Attorney Corey's and ASA Peek's) failure to supervise misdemeanor prosecutors in the course of their (the misdemeanor prosecutors') mandatory, ethical, prosecutorial obligation to analyze every criminal case, to which the misdemeanor prosecutors are assigned, to determine if a case is supported by legally cognizable, probable cause, is the cause in fact of the constitutional violation.

71.     State Attorney Corey and ASA Peek knew of the need to supervise misdemeanor prosecutors in the course of their (the misdemeanor prosecutors') mandatory, ethical, prosecutorial obligation to analyze every criminal case, to which the misdemeanor prosecutors are assigned, to determine if a case is supported by legally cognizable, probable cause, is the cause in fact of the

constitutional violation.

72.    In spite of such knowledge, State Attorney Corey and ASA Peek willfully chose to not supervise misdemeanor prosecutors in the course of their (the misdemeanor prosecutors') mandatory, ethical, prosecutorial obligation to analyze every criminal case, to which the misdemeanor prosecutors are assigned, to determine if a case is supported by legally cognizable, probable cause, is the cause in fact of the constitutional violation.

73.    Their failure to supervise the misdemeanor prosecutors in this regard amounts to deliberate indifference to a manifest need for such supervision, and was always likely to result in a misdemeanor prosecutor either making an erroneous decision about the evidentiary support of a case, or willfully ignoring the presence or lack of evidentiary support of a case, precisely like the error or willful omission that ASA Barge made prior to, and during, Plaintiff's criminal case.

### COUNT V – 42 U.S.C. § 1983: DEPRIVATION OF RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES, AS TO OFFICER WILL, AND OFFICER PFANNENSTEIN

74.    Plaintiff incorporates by reference and realleges paragraphs one (1) through fifty-three (53) as though fully set forth here.

75.    Officer Will and Officer Pfannenstein deprived Plaintiff of his clearly established right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, made applicable to the states

by virtue of the Fourteenth Amendment to the United States Constitution.  Their

seizure and detention of Plaintiff, which was absent a lawful execution of a legal

duty, is the cause in fact of the constitutional violation.

76.    Plaintiff has been harmed by Officer Will's and Officer

Pfannenstein's denial of Plaintiff's fundamental constitutional right to be free from

unreasonable searches and seizures.

### COUNT VI – 42 U.S.C. § 1983: DEPRIVATION OF RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES BY FAILURE TO TRAIN AS TO SHERIFF RUTHERFORD

77.    Plaintiff incorporates by reference and realleges paragraphs one (1)

through fifty-three (53) as though fully set forth here.

78.    Sheriff Rutherford deprived Plaintiff of his clearly established right

to be free from unreasonable searches and seizures under the Fourth Amendment

to the United States Constitution, made applicable to the states by virtue of the

Fourteenth Amendment to the United States Constitution.

79.    Sheriff Rutherford was responsible for following and implementing

all relevant laws, rules, regulations, and policies by training the JSO officers.

80.    Sheriff Rutherford was deliberately or recklessly indifferent to the

constitutional rights of individuals – particularly Plaintiff – by instituting, and/or

deliberately permitting, a custom, policy, pattern, or practice of stopping

subjectively    suspicious-looking    individuals,    based    upon    bad-faith,

unconstitutionally pretextual reasons, unrelated to the true purpose and motive for the stops.

81.     At a minimum, Sheriff Rutherford was aware of this custom, pattern, or practice, because aggrieved individuals had sued him before, complaining of substantially similar customs, policies, patterns, or practices.

82.     In spite of Sheriff Rutherford's actual awareness of this custom, policy, pattern, or practice, Sheriff Rutherford deliberately failed to take affirmative steps to disabuse JSO officers of such custom, policy, pattern, or practice – or of JSO officers' favorable opinions thereof.   Sheriff Rutherford deliberately failed to take affirmative steps to train JSO officers about the constitutional reasons for which such customs, policies, patterns or practices would be impermissible.

83.     In particular, Sheriff Rutherford failed to train adequately Officer Will and Officer Pfannenstein about the legal and constitutional limits of reasonable searches and seizures.

84.     Sheriff Rutherford's failure to train Officer Will and Officer Pfannenstein is the cause in fact of the constitutional violation.

85.     Sheriff Rutherford's failure to train Officer Will and Officer Pfannenstein amounts to deliberate indifference to a manifest need for such training, and was always foreseeably likely to result in a JSO law enforcement

officer making an erroneous decision about the reasonableness of a search or seizure, precisely like the error that Officer Will and Officer Pfannenstein made when they seized and detained Plaintiff, absent a lawful execution of a legal duty.

86.     Sheriff Rutherford's failure to train Officer Will and Officer Pfannenstein was the moving force behind their unlawful conduct toward Plaintiff, and but for Sheriff Rutherford's failure to train them and disabuse them of the custom, policy, pattern or practice that had developed among JSO officers, Officer Will and Officer Pfannenstein would not have engaged in unlawful conduct toward Plaintiff.

### COUNT VII – 42 U.S.C. § 1983: DEPRIVATION OF RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES BY FAILURE TO SUPERVISE AS TO SHERIFF RUTHERFORD

87.     Plaintiff incorporates by reference and realleges paragraphs one (1) through fifty-three (53) as though fully set forth here.

88.     Sheriff Rutherford deprived Plaintiff of his clearly established right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, made applicable to the states by virtue of the Fourteenth Amendment to the United States Constitution.

89.     Sheriff Rutherford was responsible for following and implementing all relevant laws, rules, regulations, and policies by supervising the JSO officers.

90.     Sheriff Rutherford was deliberately or recklessly indifferent to the

constitutional rights of individuals – particularly Plaintiff – by instituting, and/or deliberately permitting, a custom, policy, pattern, or practice of stopping subjectively suspicious-looking individuals, based upon bad-faith, unconstitutionally pretextual reasons, unrelated to the true purpose and motive for the stops.

91.    At a minimum, Sheriff Rutherford was aware of this custom, pattern, or practice, because aggrieved individuals had sued him before, complaining of substantially similar customs, policies, patterns, or practices.

92.    In spite of Sheriff Rutherford's actual awareness of this custom, policy, pattern, or practice, Sheriff Rutherford deliberately failed to take affirmative steps to disabuse JSO officers of such custom, policy, pattern, or practice – or of JSO officers' favorable opinions thereof.  Sheriff Rutherford deliberately failed to take affirmative steps to effectively supervise JSO officers to ensure that they did not and would not engage in such customs, policies, patterns or practices would be impermissible.

93.    In particular, Sheriff Rutherford failed to supervise adequately Officer Will and Officer Pfannenstein to ensure that they did not and would not engage in such customs, policies, patterns or practices.

94.    Sheriff Rutherford's failure to supervise adequately JSO officers who exercise otherwise autonomous authority to seize, detain, and/or arrest individuals,

is the cause in fact of the constitutional violation.

95.     Sheriff Rutherford's failure to supervise in this regard amounts to deliberate indifference to a manifest need for such supervision, and was always foreseeably likely to result in a JSO law enforcement officer making an erroneous decision about the reasonableness of a search or seizure, precisely like the error that Officer Will and Officer Pfannenstein made when they seized and detained Plaintiff, absent a lawful execution of a legal duty.

96.     Sheriff Rutherford's failure to supervise Officer Will and Officer Pfannenstein was the moving force behind their unlawful conduct toward Plaintiff, and but for Sheriff Rutherford's failure to supervise adequately, Officer Will and Officer Pfannenstein would not have engaged in unlawful conduct toward Plaintiff.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial jury on all issues so triable as a matter of right.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(1) an award of Nominal Damages;

(2) an award of Compensatory Damages;

(3) an award of Punitive Damages;

(4) an order, pursuant to 42 U.S.C. § 1983, declaring that State Attorney

Corey, ASA Peek, and ASA Barge violated Plaintiff's federal constitutional due process rights under color of state law.

(5) an order, permanently enjoining State Attorney Corey and ASA Peek from employing the powers of the State Attorney's Office for the Fourth Judicial District of Florida in a manner that deprives criminal defendants of federal constitutional due process;

(6) an award of attorneys' fees and costs, incurred in the bringing of this action; and

(7) such other and further relief as this Honorable Court deems just and proper.

Dated: October 22, 2013    **Respectfully submitted,**

**THE BONDERUD LAW FIRM, P.A.**

**/s/ Andrew M. Bonderud**
Andrew M. Bonderud, Esq.
Florida Bar No: 102178
814 North Highway A1A, Suite 202
Ponte Vedra Beach, FL 32082
(904) 438-8082 (Office)
(904) 800-1482 (Fax)
E-Mail: BonderudLaw@gmail.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Sean B. Granat, Esq., Counsel for Defendant John Rutherford, 117 West Duval

Street, Suite 480, Jacksonville, FL 32202, Sgranat@coj.net; Paul A. Daragjati, Esq., Counsel for Defendants Daniel Will and Daniel Pfannenstein, 10059 NW 1st Court, Plantation, FL 33324, Paul@robertdklausner.com, and to Albert J. Bowden, III, Esq., Counsel for Defendants Angela Corey, Cheryl Peek, and Tonya Barge, PL-01, The Capitol, Tallahassee, FL 32399, al.bowden@myfloridalegal.com.

*/s/ Andrew M. Bonderud*
Florida Bar No.: 102178
814 A1A North, Suite 202
Ponte Vedra Beach, FL 32082
(904) 438-8082 (Office)
(904) 800-1482 (Fax)
E-Mail: BonderudLaw@gmail.com
**ATTORNEY FOR PLAINTIFF**
